UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| SOUTHERN REHABILITATION GROUP, P.L.L.C. dba OCCUPATIONAL, ALTERNATIVE & REHABILITATIVE SERVICES, P.C., and JAMES P. LITTLE, M.D., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Docket No. 2:09-cv-226 |
| KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services; CIGNA GOVERNMENT SERVICES, LLC; CIGNA HEALTHCARE OF TENNESSEE, INC.; COMPUTER SCIENCES CORPORATION dba ADVANCEMED; and Q2 ADMINISTRATORS, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT IN PART

I.    Introduction

This is a lawsuit arising from Plaintiffs' dissatisfaction regarding Medicare payments. Plaintiffs sue Kathleen Sebelius, Secretary of the United States Department of Health and Human Services (the "Secretary"); CIGNA Government Services, LLC ("CIGNA-Government Svcs."); CIGNA Healthcare of Tennessee, Inc. ("CIGNA-Tennessee"); Computer Sciences Corporation ("CSC") and Q2 Administrators, LLC ("Q2 Administrators"), seeking judicial review, monetary damages, and declaratory and injunctive relief, all arising from Plaintiffs' claims for Medicare reimbursement and the handling of Plaintiffs' administrative appeals relating to those claims. Defendants respectfully move for dismissal in part of the Amended

Complaint, for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted. To the extent that certain portions of the Amended Complaint seek judicial review of a final agency decision of the Secretary, those portions of the Amended Complaint are properly before the Court. Because the Medicare statute, however, bars courts from considering any claim that is "inextricably intertwined" with a claim for Medicare payment–other than a request for judicial review of a final agency decision–all of the other claims and contentions articulated in the Amended Complaint are due to be dismissed.

II.     Factual Background and Summary of Allegations

Medicare, the federal health insurance program for the elderly and the disabled, was created under Title XVIII of the Social Security Act. See 42 U.S.C. § 1395 et seq. ("Medicare Act" or "Medicare statute"). Medicare is "a massive, complex health . . . program . . . embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations . . ." Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 13 (2000). The law of Medicare contains myriad conditions and limitations on payment.

Plaintiffs, who practice rehabilitative medicine, submit claims for payment under Part B of the Medicare program. Part B is the element of the Medicare program that pays for certain services rendered by physicians and certain other health care practitioners. See 42 U.S.C. § 1395k.

Defendant Kathleen Sebelius, as the Secretary, administers the Medicare program through an agency known as the Centers for Medicare & Medicaid Services ("CMS"). The Secretary also contracts with private organizations for the administration of many of the day-to-day tasks of running the Medicare program. Various Medicare contractors act on behalf of the

Secretary by processing Medicare claims, by conducting integrity reviews of Medicare claims, and by adjudicating certain levels of appeals in the Medicare administrative appeals process.

The defendants named in the Amended Complaint in addition to the Secretary include various Medicare contractors. CIGNA-Government Svcs. has served as a Medicare contractor known as a carrier, performing administrative duties related to the receipt, processing, and issuance of payment on Medicare claims. AdvanceMed, a wholly owned subsidiary of CSC, has served as a Program Safeguard Contractor, conducting certain medical, utilization, and fraud reviews of Medicare claims in order to determine that the claims are properly payable. Q2 Administrators is a contractor that conducts reviews at a specified level of the current Medicare administrative appeals process. CIGNA-Tennessee is a commercial health maintenance organization, and has no relationship to any element of the Amended Complaint.

Plaintiffs challenge Defendants' decisions regarding a number of Plaintiffs' Medicare claims submissions, asserting that decisions regarding Medicare payment were not based on substantial evidence and seeking reversal of the Secretary's decision. In addition, Plaintiffs challenge the constitutionality of certain aspects of the Medicare reimbursement law and seek money damages and other relief under various common law and Tennessee statutory theories.

Congress has carefully crafted the exclusive remedial scheme that is available for any matter that is intertwined with Medicare payments. In this Memorandum, Defendants will describe the statutory remedial scheme and the courts' consistent application of that scheme. Defendants will then apply the principles of the remedial scheme to the matter at hand, in order to show that many elements of the Amended Complaint fall outside the remedial scheme and hence, must be dismissed.

III. The Medicare remedial framework

    A. Judicial review of the final decision of the Secretary:
        42 U.S.C. § 1395ff(b)(1)(A), incorporating 42 U.S.C. § 405(g)

"The Medicare Act contains its own statutory grant[s] of subject-matter jurisdiction." See Westchester Mgt. Corp. v. U.S. Dep't of Health and Human Services, 948 F.2d 279, 281 (6th Cir. 1991). Indeed, the Medicare statute contains "the exclusive jurisdictional grant" for any claim or challenge that is intertwined with a claim for Medicare payment. See id. at 282.

The specific jurisdictional basis for judicial review of a final decision of the Secretary on a Medicare Part B claim is articulated at 42 U.S.C. § 1395ff(b)(1)(A). This provision states that "any individual dissatisfied . . . shall be entitled to . . . judicial review of the Secretary's final decision after [a] hearing as is provided in section 405(g) of this title." The referenced "section 405(g)" is the fundamental judicial review provision of the Social Security Act. The text of section 405(g) states, in pertinent part:

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision...

42 U.S.C. § 405(g).

Judicial review of the Secretary's final decision in a Medicare Part B case is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the correct legal standards were employed by the Secretary. Queen City Home Health Care Co. v. Sullivan, 978 F.2d 236, 243 (6th Cir. 1992) (citation omitted). In other words, the standard of review for a Medicare Part B payment decision is the same as the standard of review for a Social Security benefits case. Id. In an action for judicial review of the Secretary's final decision, the Secretary is the sole properly-named defendant. 42 C.F.R. § 405.1136(d); see 42 C.F.R. §

4

421.5(b) (Medicare contractors are not the real party in interest in Medicare litigation).

> B. <u>There can be no suit against the Medicare program other than a suit seeking judicial review of the final decision of the Secretary</u>:
> 42 U.S.C. § 1395ii, incorporating 42 U.S.C. § 405(h)

Section 1395ii of the Medicare statute expressly adopts the provisions of 42 U.S.C. § 405(h), which contains the fundamental jurisdictional bar of the Social Security Act. See 42 U.S.C. § 1395ii ("the provisions of . . . subsection[] . . . (h) . . . of section 405 of this title shall also apply with respect to this subchapter . . ."). Section 405(h) makes clear that judicial review pursuant to section 405(g) is the exclusive vehicle for getting jurisdiction before a court:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the [Secretary of HHS], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

42 U.S.C. § 405(h)(emphasis added).

So pursuant to section 405(g) (as incorporated by § 1395ff(b)(1)(A)), the requirements for getting into court entail channeling any challenge related to a Medicare claim through the administrative process to a "final decision . . . after a hearing." And pursuant to section 405(h) (as incorporated by § 1395ii), "No action . . . shall be brought . . ." outside of this framework. There can be no suit brought against the Medicare program other than a suit for judicial review of a final decision of the Secretary. See S. Rep. No. 404, 89th Cong., 1st Sess. 1965, 1965 USCCAN 1943, 1995 (June 30, 1965)("It is intended that the remedies provided by these review

5

procedures shall be exclusive.").¹

   C.   The Supreme Court's analysis

The Supreme Court has explained these fundamental statutory principles on several occasions, beginning with the Court's decision in Weinberger v. Salfi, 422 U.S. 749 (1975). In Salfi, the Court aptly characterized section 405(h) as "sweeping and direct" in its curtailment of litigation against Social Security programs and their administrators. Id. at 757. The reach of section 405(h) "is not limited to decisions of the Secretary on issues of law or fact." Id. at 762. "Rather it extends to any action seeking to recover on *any* . . . claim." Id. (emphasis added).

In a subsequent Social Security benefits case, the Supreme Court made clear that because Congress has established a comprehensive remedial scheme that provides only for judicial review after an exhaustion of administrative remedies, no money damages are available to a plaintiff. In Schweiker v. Chilicky, 487 U.S. 412 (1988), Social Security disability recipients whose benefits had been terminated but then later restored sought damages for the delay in receiving their benefits, arguing that the restoration of the benefits alone was not "adequate recompense for their injuries." 487 U.S. at 428. The Court, however, recognized that the Social Security Act "makes no provision for remedies in money damages," even in the instance where there may have been "unconstitutional conduct that leads to the wrongful denial of benefits." Id. at 424. The potential relief available is limited to the payment of the benefits sought. This was

---

¹The provision for judicial review after administrative exhaustion, 42 U.S.C. § 405(g), constitutes the United States' limited waiver of sovereign immunity in matters involving programs under the Social Security Act or the administrators of those programs. See Jackson v. Astrue, 506 F.3d 1349, 1353 (11th Cir. 2007) ("In 42 U.S.C. § 405(g), Congress waived sovereign immunity by giving the federal courts jurisdiction to review and modify or reverse" final agency decisions, and in 42 U.S.C. § 405(h), Congress made clear that 405(g) was "the exclusive source of federal court jurisdiction over cases involving" Social Security programs).

6

Congress' design in the Social Security Act, and Congress alone had the authority to make "the inevitable compromises required in the design of a massive and complex" program such as Social Security. Id. at 429.

The Supreme Court first applied these principles to the Medicare context in Heckler v. Ringer, 466 U.S. 602 (1984). In Ringer, the Court observed that the terms of the Medicare statute supply the exclusive avenue of review for any claim "arising under" the Medicare Act. Id. at 614-5. It did not matter that the Ringer plaintiffs framed their claim in part as a challenge under the Constitution and under various statutes other than the Medicare statute. See id. at 622. The Court upheld "Congress' carefully crafted scheme for administering the Medicare Act," id. at 621, which includes the requirement at section 405(g) that administrative remedies must be exhausted before a court may ever review a Medicare claim. See id. at 622. Outside of this scheme – judicial review of a final agency decision, after an exhaustion of administrative remedies – the Medicare statute bars the courts from considering any claim that is "inextricably intertwined" with a claim for Medicare payment. Id. at 614-5.

Most recently, in Illinois Council on Long Term Care, 529 U.S. 1, the Court reiterated that a plaintiff with a Medicare-related challenge must "establish jurisdiction under § 405(g)." See id. at 15. The Court reviewed its jurisprudence in Salfi and Ringer and once again upheld "the bar of § 405(h)." Id. at 12 (citations omitted).

  D. <u>The courts of appeals have recognized the exclusivity of the Medicare remedial scheme</u>

The Court of Appeals for the Sixth Circuit has also recognized that the Medicare remedial framework, which provides only for judicial review of a final administrative decision of the Secretary, is the exclusive basis by which a court may ever entertain a challenge that is

7

intertwined with a claim for Medicare payments. For instance, in <u>Livingston Care Center, Inc. v. U.S.</u>, 934 F.2d 719 (6th Cir. 1991), the Sixth Circuit ruled that the Medicare statute foreclosed a plaintiff's claim for consequential damages. The plaintiff, a nursing home operator, had been terminated from participation in the Medicare program. <u>Id.</u> at 720. The plaintiff sued, seeking damages for the Secretary's alleged negligent termination of the plaintiff's Medicare participation. <u>Id.</u> at 720, 722. The Sixth Circuit had no difficulty in disposing of the plaintiff's action for consequential damages, observing that "Congress proscribed such claims when it enacted [42 U.S.C.] § 1395ii." <u>Id.</u> at 723; <u>see also</u> <u>Giesse v. Secretary of the Dep't of Health and Human Services</u>, 522 F.3d 697, 705 (6th Cir. 2008) (rejecting Medicare beneficiary's attempt to sue for damages, and noting "Congress' unequivocal prohibition of suits outside of" the Medicare appeals scheme).

The Sixth Circuit also addressed the issue in <u>DMC-Memphis, Inc. v. Mutual of Omaha</u>, 105 Fed.Appx. 671, 2004 WL 1491641 (6th Cir. Jun. 29, 2004). In <u>DMC-Memphis</u> the plaintiff asserted that a Medicare contractor negligently calculated the plaintiff's Medicare reimbursement and hence, that the plaintiff should be granted relief in the form of an exemption from certain obligations under Medicare law. 2004 WL 1491641 *2. The Sixth Circuit, though, recognized that even if one assumed there had been some negligence, the plaintiff's contentions still "arose under" the Medicare Act. <u>Id.</u> at *3. That ended the matter. The fact that there may be no remedy for any negligence did not change anything: "It may simply be the case that the Medicare Act has chosen not to remedy every possible wrong," the Sixth Circuit observed. <u>Id.</u> at *3. The plaintiff was due no relief.

Other appellate courts have also consistently recognized the limitations on the relief that

8

is available against the Medicare program. Two examples will suffice. In Marsaw v. Thompson, 133 Fed.Appx. 946, 2005 WL 1170445 (5th Cir. May 18, 2005), the plaintiff owned several rehabilitation clinics. 2005 WL 1170445 at *1. The plaintiff's claims for Medicare payment had been denied by the Medicare program, and ultimately the plaintiff closed his businesses. Id. Over the course of the Medicare administrative appeals process, the vast majority of the plaintiff's Medicare claims were eventually approved for Medicare payment. Id. But the plaintiff also wanted damages. Id. He claimed that the Medicare program had harmed him by violating state laws and the U.S. Constitution. Id. However, the Fifth Circuit recognized that the relief available to the plaintiff was limited to the payment of his Medicare claims. Damages under other legal theories were not available:

> Because Marsaw has now received precisely the Medicare payments he claims were wrongfully denied, and the statute entitles him to no other relief, his case is moot.

Id. at *2.

In Bodimetric Health Services, Inc. v. Aetna Life & Casualty, 903 F.2d 480 (7th Cir. 1990), the plaintiff, an operator of home health agencies, sought to sue a Medicare contractor under a host of state law theories, including breach of fiduciary duty, breach of third-party beneficiary relationship, and other theories. Id. at 482-83. The Medicare contractor had denied the plaintiff's claims for Medicare payment. Id. at 482. The plaintiff filed administrative appeals of the denied claims, and administrative law judges consistently reversed the contractor's denials of the Medicare claims in the plaintiff's favor. Id. But the Seventh Circuit recognized that "the exclusive review mechanisms of the Medicare Act" barred the plaintiff's various state law claims. Id. at 481-2. The court determined that there was no jurisdiction over

9

the plaintiff's suit, id. at 490, regardless of the plaintiff's attempt to argue that its tort and contract law claims were not "inextricably intertwined" with claims for Medicare payments, id. at 483-7; regardless of the plaintiff's attempt to sue the Medicare contractor (rather than the federal government), id. at 487-8; and regardless of the plaintiff's attempt to assert diversity jurisdiction, id. at 488-9. The Seventh Circuit concluded its opinion pointedly:

> By enacting the exclusive review provisions of the Medicare Act, Congress expressly limited the remedies that can be sought by dissatisfied claimants from [the Medicare program or its contractors]. While this may, in some cases, foreclose avenues of relief generally available to civil litigants, it is also the system Congress clearly intended to implement...

Id. at 490.

IV. <u>Argument</u>

Applying these legal principles to the Amended Complaint in the instant matter, certain limited elements of the Amended Complaint may stand. Plaintiffs have indeed received a final agency decision on certain Medicare claims that they have submitted fully through the administrative appeals process, to the point of exhaustion, and Plaintiffs now seek review of the final agency decision. However, most of the elements of the Amended Complaint are due to be dismissed.

    A. <u>Counts I and III, and a portion of Count II, of the Amended Complaint are appropriately before the Court for review, and are not part of this Motion to Dismiss</u>

Count I asserts that the Secretary's final decision was "not based on substantial evidence" Amended Complaint, Count I, at ¶¶ 75-83. This count is a properly-stated request for judicial review, as regards those of Plaintiffs' Medicare claims submissions that have received a final decision from the Secretary. A final agency decision of the Secretary was issued with regard to

10

certain Medicare claims on August 14, 2009, in the decision of the Medicare Appeals Council (the highest-level administrative adjudicator). The final agency decision of the Secretary was not fully favorable to Plaintiffs. (The decision was partially favorable to them.) Pursuant to the authorizing statute, 42 U.S.C. § 1395ff(b), the Court has jurisdiction to review the Secretary's final decision, in order to ascertain whether that decision was supported by substantial evidence in the administrative record.[2]

To the extent that a portion of Count II may allege that the Secretary's final decision did not comport with the applicable principles of Medicare law, see Amended Complaint at ¶85, the Court may review whether the correct legal standards were employed in the final agency decision, along with the Court's review for substantial evidence in support of the decision.

Count III asserts Constitutional challenges to certain aspects of Medicare reimbursement law. See Amended Complaint, Count III, at ¶¶ 98-105. These contentions can be addressed readily at the appropriate time in a dispositive motion by the Secretary seeking judgment affirming the Secretary's final decision.

B. <u>The remainder of Count II is due to be dismissed because there has been no exhaustion of administrative remedies.</u>

Plaintiffs allege that certain of Plaintiffs' claims for Medicare payment – which they characterize in the Amended Complaint as "Group 1" claims – were not properly processed by

---

[2]To the extent that Plaintiffs seek to complain about the adequacy of the decisions rendered by any of the administrative decision-makers at levels beneath the Medicare Appeals Council, see, e.g., Amended Complaint at ¶ 89b,c,d,e, those elements of the Amended Complaint are due to be dismissed. The Supreme Court has recognized that one of the purposes of a multi-level administrative appeals process is to provide a government program an opportunity to address its own errors. See Salfi, 422 U.S. at 765. It is solely the integrity of *the final decision of the Secretary* that comes before a court for review.

11

CIGNA, the Medicare carrier, when the Plaintiffs requested that CIGNA make a "review determination" of CIGNA's initial denial of these claims in or about 2002 (Amended Complaint at ¶¶ 88, 92; see Amended Complaint at ¶¶ 49-61). Plaintiffs' allegations regarding these Medicare claims are due to be dismissed. Plaintiffs never exhausted their administrative remedies regarding these Medicare claims; therefore, the Court lacks jurisdiction over them.[3]

Pursuant to the federal regulations that governed Medicare Part B appeals in 2002, an entity dissatisfied with an initial determination in which a carrier denied a Medicare claim had a right to "request that the carrier review such determination." 42 C.F.R. § 405.807(a) (2002). If the carrier failed to issue a review determination, the Medicare regulations prescribed the next step: If the carrier did not issue a review determination with reasonable promptness, i.e., within sixty (60) days, id. § 405.802, the recourse for the party seeking review was to request a hearing before a carrier hearing officer. Id. §§ 405.801, 405.821(c). In other words, the party's recourse in that situation was simply to proceed, without further ado, to invoke the next step of the Medicare administrative appeals process.

Plaintiffs' contention that they were "denied . . . their right to exhaust administrative remedies" (Amended Complaint at ¶ 92) is misguided. Even assuming the facts to be as Plaintiffs allege them regarding their "Group 1" claims, Plaintiffs should have requested a hearing when 60 days had elapsed after Plaintiffs sought a review determination from CIGNA on these claims. That is what the law in effect then directed. Plaintiffs evidently did not do so.

---

[3]The Amended Complaint's classification of various of claims for Medicare payment into Groups 1, 2, 3, and 4 is Plaintiffs' own classification. Under applicable law, only those claims for Medicare payment that were both (a) considered in a final decision of the Secretary and (b) denied payment (or denied payment at the level sought), can come before a court for review. Plaintiffs' classification of its various "groups" of Medicare claims is not determinative.

12

Accordingly, by their own inaction Plaintiffs failed to exhaust their administrative remedies with regard to their "Group 1" claims, and the Court lacks jurisdiction over those claims at this time.[4] [5]

    C.    <u>Counts IV through IX are due to be dismissed because they fall outside of the Medicare remedial framework.</u>

In Counts IV through IX, inclusive, Plaintiffs assert challenges under a host of state common law and state statutory theories:

- breach of contract, alleging that Defendants "breached contracts between and among each other by not properly paying Plaintiffs' claims for Medicare payment," and alleging that Plaintiffs are therefore due relief both as "third-party beneficiaries" of the contracts and under a theory of "independent[] liab[ility]" (Amended Complaint at Count IV, ¶¶ 106-120);

- unjust enrichment (Amended Complaint at Count V, ¶¶ 121-127);

- violation of a Tennessee statute, Tenn. Code Ann. § 56-7-109, which provides for prompt

---

[4] Even if the exclusive Medicare remedial scheme did not control here, general federal law would preclude Plaintiffs from complaining about what did or did not happen back as far as 2002. See generally 28 U.S.C. § 2401(a) (barring civil actions against the United States filed more than 6 years after the right of action first accrues).

[5] Similarly, Plaintiffs also allege that Q2 Administrators, an administrative adjudicator known as a qualified independent contractor ("QIC"), failed to issue timely reconsideration decisions on certain of Plaintiffs' Medicare claims (Amended Complaint at ¶ 89a). Again, the law provides a straightforward recourse: if a QIC fails to issue a reconsideration decision within 60 days, the recourse is to request a hearing. 42 U.S.C. § 1395ff(c)(3)(C)(ii). Plaintiffs also allege that there has been a "fail[ure] to issue an ALJ opinion as to Group 2 claims" (Amended Complaint ¶¶ 62, 94). If an ALJ fails to issue a timely decision, the law provides that a party may proceed to request a review by the Medicare Appeals Council. 42 U.S.C. § 1395ff(d)(3)(A). In an instance where a party believes there has been an untimely issuance of a decision, the recourse is to proceed to invoke the next step of the administrative appeals process.

13

payment of claims submitted by health care providers to a "health insurance entity"(i.e., an "entity subject to the insurance laws of th[e] state") (Amended Complaint at Count VI, ¶¶ 128-132);

- willful and/or fraudulent misrepresentation, by "a common scheme [to] deny, delay and diminish payments" (Amended Complaint at Count VII, ¶¶ 133-138);

- negligence, in that Defendants allegedly lacked the "required training or expertise in Plaintiffs' specialty to properly review Plaintiffs' [Medicare claims]" and breached a duty to "exercise due care" in processing those claims (Amended Complaint at Count VIII, ¶¶ 139-142); and

- negligent training and supervision, asserting that Defendants failed to remedy the alleged lack of competence of their employees in processing Plaintiffs' Medicare claims (Amended Complaint at Count IX, ¶¶ 150-156).

None of these constitutes a claim upon which relief can be granted, and indeed, all of these fall outside of the jurisdiction of the Court. Medicare law strictly limits suit to nothing other than judicial review of the final agency decision of the Secretary. The potential relief is limited to nothing more than the payment of the Medicare Part B claims addressed by the final agency decision. Accordingly, *Plaintiffs' various common law and Tennessee statutory claims are all precluded by the exclusive nature of the remedial scheme created in the Medicare statute.* On the basis of the rationales and authorities discussed supra in section II, Counts IV through IX of the Amended Complaint are all due to be dismissed.

14

V.      Conclusion

Plaintiffs are entitled to judicial review of the Secretary's final agency decision, which the Medicare Appeals Council issued on August 14, 2009. The Court is authorized to consider whether that final agency decision was supported by substantial evidence in the administrative record and whether that final agency decision comported with the applicable legal standards. This is the only suit against the Medicare program or its administrators that the law allows.

Any Medicare claims not contemplated or covered by the Secretary's final agency decision are outside the jurisdiction of the Court. Any efforts to seek any other form of relief also fall outside the jurisdiction of the Court.

For all the reasons discussed above, the Amended Complaint is due to be dismissed, except those limited portions of the Amended Complaint which, pursuant to 42 U.S.C. § 1395ff(b), seek judicial review of the final agency decision issued by the Secretary. Furthermore, consistent with 42 C.F.R. § 405.1136(d), the Secretary should be named as the sole proper defendant in this suit.

Respectfully submitted,

WILLIAM C. KILLIAN
United States Attorney

By: <u>/s/Robert C. McConkey, III</u>
Robert C. McConkey III (BPR #18118)
Assistant U.S. Attorney
Loretta S. Harber (BPR # 07221)
Assistant U.S. Attorney
United States Attorney's Office
Counsel for the Defendants
800 Market St., Suite 211
Knoxville, TN 37902
(865) 545-4167

Of Counsel:

Mark B. Childress, Acting General Counsel
Dana J. Petti, Chief Counsel, Region IV
Greg Bongiovanni, Assistant Regional Counsel
Office of the General Counsel
U.S. Department of Health and Human Services
Suite 5M60 Atlanta Federal Center
61 Forsyth St., SW
Atlanta, GA 30303-8909
Phone: (404) 562-7836

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 16, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

<u>/s/Robert C. McConkey, III</u>
ROBERT C. McCONKEY, III
Assistant U.S. Attorney